UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 23-MJ-00331-MAU |
| | : | |
| PATRICK WOEHL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE**

Patrick Woehl unlawfully entered the U.S. Capitol in the midst of a violent riot. The government acknowledges that Woehl is currently only charged with misdemeanors and is not aware of evidence that Woehl assaulted officers. Primarily for these reasons, the government agreed that Woehl may remain on release pending trial, without a curfew, home detention, or monitoring – but not without conditions. Here, the condition that Woehl surrender his passport and not obtain another passport or other international travel document are among the minimum conditions necessary to ensure the safety of the community and ensure Woehl's appearance at trial and other court proceedings. Woehl's involvement in the January 6, 2021 riot and the circumstances surrounding his arrest justify these restrictions. Accordingly, the Court should deny Woehl's motion.

**BACKGROUND**

The defendant, Patrick Woehl, unlawfully entered the U.S. Capitol on January 6, 2021. Woehl made his entrance into the Capitol at approximately 2:24 pm through the Senate Wing Door. During the 25 minutes he remained inside the Capitol, he made his way to the Rotunda before exiting through the East Front Doors. For his conduct, Woehl was charged by complaint

with four misdemeanors (violations of 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G)). ECF No. 1. The FBI also obtained a warrant to search Woehl's residence.

On December 13, 2023, Woehl was arrested outside of his Citrus Heights, California, home. The morning of the arrest, as FBI agents were positioned outside of Woehl's home, an agent left approximately seven voicemail messages for Woehl. In those messages, the agent informed Woehl that the FBI had a warrant to search the house and asked Woehl to return the call. The agent also spoke to Woehl's father, asking him to reach out to Woehl and have Woehl call the agent. Woehl did not return the calls. Instead, Woehl got in his vehicle and began backing out of his driveway. The vehicle's progress was blocked by an unmarked FBI vehicle and agents approached the vehicle while issuing verbal commands to turn off and get out of the car. After approximately one minute, Woehl got out of the car and agents arrested him.

Agents saw Woehl's cellphone on the passenger seat of the vehicle. The phone was unlocked and Woehl's home security camera footage was visible on the screen—Woehl had been monitoring his home security cameras while trying to avoid law enforcement.

During the search of Woehl's home, agents found a DPMS .556 caliber rifle with a foregrip, removable magazines, and an adjustable butt stock, accessories that render the firearm unlawful under California law. In addition, rifle was not registered, as apparently required by California law.

At his initial appearance in the Northern District of California, Woehl was released on conditions. ECF No. 12.

On January 2, 2024, the Pretrial Services Agency for the District of Columbia submitted a Pretrial Services Report for Woehl in connection with his initial appearance in this district. In this report, Pretrial Services recommended that Woehl be released on a number of conditions, including

that he "[s]urrender all passports to the Pretrial Services Agency" and "[n]ot obtain a passport or other international travel document." ECF No. 6. On January 2, 2024, Magistrate Judge Meriweather imposed the release conditions that Woehl surrender his passport and not obtain a passport or international travel document. ECF No. 7. Woehl is also required to obtain Court approval for travel outside of the continental United States. Id.

On January 31, 2024, Woehl moved to amend the conditions of release to allow him to possess his passport from February 16, 2024 to February 30, 2024, and seeks approval to travel to Italy during this timeframe. ECF. No. 13.

## ARGUMENT

### I. Applicable Authority

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). These conditions may include the condition that the person "abide by specified restrictions on…travel." 18 U.S.C. § 3142(c)(1)(B)(iv). The Court is authorized to impose "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xiv).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the

evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) ("Section 3142(g) factors"). The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

**II.     The Court Should Not Modify Woehl's Release Conditions**

Woehl is already subject to the "least restrictive" combination of conditions necessary to ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B). The nature and circumstances of Woehl's offense (his participation in the Capitol riot), as well as his possession of an unregistered, unlawful firearm, demonstrate that he poses a danger.  And the circumstances of his arrest, including his attempt to leave his residence while monitoring law enforcement's activity outside and drive his vehicle out of his blocked driveway, indicate that he presents a risk of flight. And yet, Woehl is not subject to home detention, a curfew, or GPS monitoring; instead, he must submit to supervision by Pretrial Services and is not permitted to possess firearms. Together with these relatively limited conditions, the passport and travel restrictions creates the least restrictive combination of conditions required to mitigate the danger that he poses to the community.

**A.  The Section 31429(g) Factors Favor Maintaining the Condition that Woehl Surrender his Passport**

The Section 3142(g) factors justify including the passport restriction among Woehl's conditions of release. While Woehl is currently charged only with misdemeanors, the nature and circumstances of the offense support restricting his ability to travel internationally before trial. Fully aware that rioters were storming the Capitol, Woehl joined in and unlawfully entered the Capitol, knowing full well that law enforcement officers were struggling against the tide of rioters. While he may be currently charged with misdemeanors only, Woehl joined a violent attack on our

4

nation's democracy. The nature and circumstances of his offense suggest that Woehl does pose a danger and warrant international travel restrictions.

The weight of the evidence of Woehl's conduct is strong. The evidence in this case includes U.S. Capitol Police security footage showing Woehl inside the Capitol Building, and open source video showing Woehl's participation in the January 6 riot.

Woehl's history and characteristics, including his troubling conduct before his arrest, also support restricting Woehl's international travel. Although the FBI was outside of Woehl's home and left messages for Woehl about having a warrant to search Woehl's home, Woehl watched security footage on his phone and tried to leave. He also refused commands to exit his vehicle for approximately one minute after the vehicle was blocked from leaving the area. Woehl's possession of a firearm that violates California's gun laws is also troubling. These circumstances demonstrate that the passport restriction is required to mitigate danger to the community and risk of flight.

Courts in this district have been faced with defendants' requests for international travel while awaiting trial on January 6-related charges. In *United States v. Williams*, a defendant on pretrial release for multiple charges, including a "serious felony offense, stemming from his alleged actions on January 6, 2021," moved for permission to travel to Jamaica for a week. *United States v. Williams,* 21-cr-00377-BAH, Minute Order, January 7, 2022. The Court denied the defendant's request for "non-essential foreign travel" noting that the defendant "surrendered his entitlement to unfettered international travel" when he joined the riot on January 6, 2021. *Id.*

In *United States v. Irizarry*, the defendant was charged with misdemeanors stemming from his actions on January 6, 2021. The defendant was an "honors student at The Citadel, a military college in South Carolina, who won a merit-based scholarship to study abroad in Estonia. *United States v. Irizarry*, No. 22-3028 2022 WL 2284298, at *1 (D.C. Cir. June 24, 2022) (unpublished).

Though the government did not oppose the defendant's attendance at this study abroad program, the district court denied the travel. *Id.* The Court of Appeals reversed, holding that the travel was warranted because the district court did not find that the defendant was a flight risk or dangerous, "much less that completely denying his motion for travel was the least restrictive means of reasonably assuring his appearance and the safety of the community." *Id.*

Unlike the defendant in *Irizarry*, Woehl's conduct around the time of his arrest raise individualized concerns regarding the risk of flight and dangerousness. Here, the nature of and seriousness of the danger posed justifies the passport restriction. Woehl willingly joined in a violent and destructive attack on the Capitol and ignored law enforcement when they sought to execute a search warrant at Woehl's home while possessing a firearm that was illegal under California law. If Woehl is to remain on release, a passport restriction is a minimally necessary condition required to ensure the safety of the community and mitigate the risk of non-appearance.

## CONCLUSION

Restricting Woehl from possessing a passport is the least restrictive condition the Court can impose to assure the safety of the community and mitigate the risk of non-appearance. The Court should deny Woehl's motion.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    s/ *Anna Z. Krasinski*
        ANNA Z. KRASINSKI
        Assistant United States Attorney
        New Hampshire Bar No. 276778
        United States Attorney's Office
        Detailed from the District of New Hampshire
        (202) 809-2058
        anna.krasinski@usdoj.gov